# United States Court of Appeals
## For the First Circuit

No. 05-1264

SITI MARYAM; JAMAL HAJI GILING,

Petitioners,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lynch, and Lipez, <u>Circuit Judges</u>.

<u>H. Raymond Fasano</u> and <u>Madeo & Fasano</u>, on brief for petitioners.
<u>Leslie McKay</u>, Attorney, Office of Immigration Litigation, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Terri J. Scadron</u>, Assistant Director, on brief for respondent.

August 31, 2005

**LYNCH**, **Circuit Judge**. Petitioners Siti Maryam and Jamal Haji Giling,[1] a married couple, are natives and citizens of Indonesia. They seek review of an order of the Board of Immigration Appeals (BIA) denying their motion to reopen proceedings to apply for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the BIA's decision did not constitute an abuse of discretion, we deny the petition for review.

## I.

Petitioners entered the United States with visitors' visas. Each petitioner's permission to remain in the country expired, and on August 13, 2001, removal proceedings against petitioners were initiated by the filing of Notices to Appear. Petitioners were charged with removability for remaining longer than permitted following admission as nonimmigrants. On November 1, 2001, petitioners conceded removability, but sought asylum, withholding of removal, and protection under the CAT. On May 14, 2002, there was a hearing on these requests for relief. The IJ pretermitted petitioners' application for asylum as untimely. Finding that the Indonesian government did not sanction persecution of ethnic Chinese persons -- a class of which petitioner Maryam is

---

[1] The record is inconsistent on the spelling of the latter petitioner's name. It occasionally appears as Jamal Argi Giliang. This court will employ the spelling that appears in the briefs before it.

a member -- the IJ also denied their applications for withholding of removal and for protection under the CAT.

Petitioners timely appealed the IJ's decision to the BIA. On November 28, 2003, the BIA summarily affirmed. Petitioners petitioned this court for review of that summary affirmance, but their petition was barred as untimely.

On October 12, 2004, petitioners filed a motion to reopen with the BIA. They argued that reopening was appropriate in light of changed circumstances in Indonesia. In particular, petitioners argued that Indonesia had seen growing violence by extremist Muslims against Christians, and that as moderate Muslims, they would be in danger if they returned.

The BIA denied the motion to reopen on February 10, 2005. It found that petitioners had failed to show a change in country conditions that materially affected their claim for asylum and withholding of removal. The BIA noted that most of petitioners' evidence went to violence against Christians; that to the extent the evidence pertained to violence against Muslims, it showed only isolated events that did not target mosques or moderate Muslims (for instance, some Muslims were "indirectly injured" during attacks on Christian churches); that the rise -- if any -- of Islamic norms in Indonesian civil society had not been shown to constitute persecution against moderate Muslims; and that generalized disorder or violence in Indonesia did not constitute

-3-

grounds for asylum, withholding of removal, or protection under the CAT. The BIA also noted that the Indonesian government was engaged in efforts to reduce religious conflict.

Following the denial of their request to reopen, petitioners timely filed this petition for review.[2]

**II.**

A motion to reopen "shall state the new facts that will be proven at a hearing" and "shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). One basis for reopening is changed country circumstances. See id. § 1003.2(c)(3)(ii); see also id. § 1208.4(a)(4)(i)(A) (defining "changed circumstances" to include "[c]hanges in conditions in the applicant's country of nationality" that "materially affect[] the applicant's eligibility for asylum").

The BIA may deny a motion to reopen on the grounds that "the movant has not established a prima facie case for the underlying substantive relief sought." INS v. Abudu, 485 U.S. 94,

[2] In their motion to reopen, petitioners also alleged ineffective assistance of former counsel and requested that, based on this ineffective assistance, the BIA either reopen the proceedings or reissue its November 28, 2003 order. In its February 10, 2005 order, the BIA denied this request. In their petition to this court, petitioners have raised neither the ineffective assistance claim nor the rejection of their request to reissue. We therefore consider only the BIA's denial of petitioners' motion to reopen in light of changed circumstances.

-4-

104 (1988).[3] "The decision to grant or deny a motion to reopen . . . is within the discretion of the [BIA]," and the BIA "has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a).

This Court reviews a decision by the BIA to deny a motion to reopen only for abuse of discretion. See Abudu, 485 U.S. at 96; Maindrond v. Ashcroft, 385 F.3d 98, 100 (1st Cir. 2004). "An abuse of discretion will be found where the BIA misinterprets the law, or acts either arbitrarily or capriciously." Wang v. Ashcroft, 367 F.3d 25, 27 (1st Cir. 2004). Petitioners claim that the BIA abused its discretion by failing to analyze properly the evidence supporting their claim that "country conditions for moderate Muslims had worsened." We disagree.

The BIA thoroughly reviewed the evidence offered to show persecution and carefully -- and correctly -- explained how this evidence failed to show a "material change in circumstances which

---

[3] Applicants for asylum have the burden of establishing eligibility, which they may do by, inter alia, showing a well-founded fear of persecution on account of one of five protected grounds -- "race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(a), (b)(2)(i)(A). As for withholding of removal, "[t]he burden of proof is on the applicant . . . to establish that his or her life or freedom would be threatened in the proposed country of removal" on account of one of the five protected grounds. Id. § 1208.16(b); see also 8 U.S.C. § 1231(b)(3)(A), (C). Lastly, with respect to protection under the CAT, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

establishes prima facie evidence of persecution . . . on account of a protected ground." Contrary to petitioners' suggestions, the BIA did not fail to discuss "background evidence that post-dated the petitioners' hearing"; rather, it acknowledged this evidence but found it insufficient to support their claim that they would be persecuted on the basis of their religious beliefs should they return to Indonesia.[4]

The BIA reasonably found that the record contained essentially no direct evidence of persecution of moderate Muslims, and that any indirect evidence, based on persecution of Christians, was too attenuated to be the basis of relief. In petitioners' own summary of the evidence in their brief to this court, virtually all of the even arguably state-sanctioned violence is targeted at Christians. Although this violence may well be "a matter of growing concern to . . . Muslim moderates," the BIA was hardly compelled to find that this concern stemmed from a risk of actual persecution of moderate Muslims themselves. The "growing concern" of moderate Muslims could be attributable to humanitarian values,

---

[4]  The government notes that petitioners largely failed to show that the conditions they described were new. Although the government might be correct that much of petitioners' evidence of violent conditions in Indonesia predated the May 14, 2002 hearing and decision by the IJ, this fact was not relied upon by the BIA in its denial of reopening. Rather, the BIA based its decision upon the ground that even if petitioners had proven a change in country circumstances, that change was immaterial to their own applications for relief. As we explain in the text, this conclusion was amply justified.

the desire to avoid becoming the accidental victim of an attack on Christians, or any number of other causes. At least in the absence of more evidence on this point, it is simply not evident how any escalation of violence against Christians could be material to a claim of persecution raised by moderate Muslims. To the extent that Islamic fundamentalism is on the rise in Indonesia, it is likewise not obvious how, if at all, moderate Muslims are likely to be persecuted. At best, petitioners have shown religious intolerance against non-Muslims -- intolerance that, as the BIA noted, the Indonesian government is taking steps to counteract.

Lastly, the BIA correctly noted that petitioners' showing of generalized disorder and even terrorist violence in Indonesia is insufficient to make them eligible for relief. As this court has stated, "[g]enerally, evidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution." Debab v. INS, 163 F.3d 21, 27 (1st Cir. 1998) (quoting Ravindran v. INS, 976 F.2d 754, 759 (1st Cir. 1992)). See also Mequenine v. INS, 139 F.3d 25, 29 (1st Cir. 1998) ("[G]eneral fears (even 'well-founded' ones) of future harm from political upheaval or terrorist violence are not sufficient to establish eligibility for asylum under § 208(a) of the [Immigration and Nationality Act].").

It is clear that the BIA's well-reasoned decision was anything but arbitrary and capricious. Cf. Maindrond, 385 F.3d at 100

("Since the BIA offered two rational explanations for the denial of the motion to reopen, it has not acted arbitrarily and capriciously, and there was no abuse of discretion.").

### III.

Because the BIA's denial of petitioners' motion to reopen was not an abuse of discretion, the petition for review is **denied**.