# United States Court of Appeals
## For the First Circuit

No. 11-2086

LUIS G. ESCOBAR,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin and Thompson,

Circuit Judges.

Carlos E. Estrada on brief for petitioner.
Shahrzad Baghai, Office of Immigration Litigation, Civil Division, Department of Justice, Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Terri J. Scadron, Assistant Director, Office of Immigration Litigation, on brief for respondent.

October 22, 2012

**BOUDIN**, **Circuit Judge**.  Luis Escobar, a citizen of Guatemala, seeks review of a decision by the Board of Immigration Appeals ("BIA") denying his applications for asylum, statutory withholding of removal and protection under the Convention Against Torture.  In June 1989 Escobar, then age 18, arrived in the United States.  Four years later, he applied for asylum, asserting that he had fled his native country due to political persecution after Guatemalan police had accused him of being a "guerrilla sympathizer."

In March 2006, after the Department of Homeland Security began removal proceedings against him, Escobar offered a different version of his claim in an updated application and in testimony in the immigration court proceeding.  Escobar now says that he left the country because he feared persecution by guerillas whose recruitment efforts he had twice resisted.  He also described an incident in which guerrillas allegedly bombed a bus driven by his father, a second incident in which he and his mother witnessed guerrilla activity during a bus ride and a subsequent bus ride in which guerrillas robbed his mother.

On these premises, Escobar argued that he was the victim of past political persecution and that, if returned to Guatemala, he would also be subject to persecution on account of "membership in a particular social group," namely, "the particular social group of Guatemalan nationals repatriated from the United States."  The

IJ denied relief, finding that Escobar was a "credible witness" but that the facts did not support his asylum application or other claims for relief. The BIA affirmed based on the IJ's decision and Escobar now petitions for review in this court.

This entails review of the IJ's rationale, since the BIA accepted it without alteration. Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009). The IJ's factual findings stand if supported by substantial evidence, id., while on questions of law we afford "appropriate deference" but not carte blanche to immigration authorities. Lobo v. Holder, 684 F.3d 11, 16 (1st Cir. 2012) (quoting Sok v. Mukasey, 526 F.3d 48, 53 (1st Cir. 2008)). Under the statute, asylum depends on showing a well-founded fear of future persecution based on a protected ground. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (2006); Lobo, 684 F.3d at 16.

The two statutory bases for persecution invoked here are "membership in a particular social group" and "political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); see also 8 C.F.R. § 1208.13(b)(1)-(2) (2012). Past persecution on a protected ground gives rise to a "rebuttable presumption that a well-founded fear of future persecution endures." Guerrero v. Holder, 667 F.3d 74, 77 (1st Cir. 2012); see also 8 C.F.R. § 1208.13(b)(1). The past persecution on which Escobar principally relies is reflected in two incidents in which, he says, guerillas attempted to recruit him.

The first occurred in May 1985 when Escobar was 14 or 15 years old and guerrillas came to his school to gather new recruits. Escobar's updated application also asserts that in 1988 guerrillas appeared while he was visiting his grandparents and threatened to kill him if he refused to join their forces, although Escobar does not mention this incident in his testimony. In neither case is there any indication that the guerrillas targeted Escobar because of his political opinions, real or imputed, so neither incident suggests past persecution on a protected ground. See Tobon-Marin v. Mukasey, 512 F.3d 28, 31 (1st Cir. 2008).

Nor do any of the bus incidents support an inference that Escobar or either parent was persecuted based on their political opinions. His father was driving a bus that was bombed by guerrillas in 1980, but nothing indicates that the guerrillas specifically targeted Escobar's father. He and his mother, while riding a public bus in 1988, merely witnessed a fight between guerrillas and the authorities. And on yet another bus ride in 1993, guerrillas robbed his mother and other passengers, but there is no suggestion that she was singled out.

Escobar's father and mother, like Escobar himself, appear to have been victims of the "general harm attributable to the widespread civil strife that plagued Guatemala during that time," but the record does not show that they were "persecuted on an individual basis." Velasquez v. Ashcroft, 342 F.3d 55, 58 (1st

-4-

Cir. 2003). Evidence of "widespread violence . . . affecting all citizens" is not enough to establish persecution on a protected ground. Maryam v. Gonzales, 421 F.3d 60, 63 (1st Cir. 2005).

Whatever Escobar's subjective fear of persecution, he has not shown "an objectively reasonable basis for that fear." Gilca v. Holder, 680 F.3d 109, 115 (1st Cir. 2012) (quoting Lopez Perez v. Holder, 587 F.3d 456, 461-62 (1st Cir. 2009)). Nothing in the events described shows that Escobar or his family were harassed for their political opinions. Further, the Guatemalan government and the guerrillas signed a peace agreement in 1996, and the guerrillas "renounced the use of force to achieve political goals." INS v. Ventura, 537 U.S. 12, 17 (2002) (per curiam) (quoting State Department report).

Alternatively, Escobar asserts a "very reasonable possibility that he will be persecuted in Guatemala based upon his membership in the particular social group of Guatemalan nationals repatriated from the United States." His theory appears to be that Guatemalan gangs will assume that he amassed significant wealth during his two-decade-long stay in the United States and that he will be a target of extortion and other criminal activity as a result of his perceived wealth. He relies on "personal knowledge of people who have been harmed when they returned to Guatemala from the United States" and reports from the State Department and human

rights organizations confirming that violent crime in Guatemala is widespread.

We rejected such a legal theory in <u>Sicaju-Diaz</u> v. <u>Holder</u>, 663 F.3d 1 (1st Cir. 2011). It is one thing to be targeted for expropriation (or worse) by the <u>government</u> because of social class, race or ethnicity; it is quite another for wealthy citizens to be targeted by <u>criminals</u> merely because they have wealth to steal. <u>Sicaju-Diaz</u>, dealing directly with Guatemalans at risk of crime because they were perceived to be wealthy, rejected the view that this is persecution based on membership in "a social class or group" within the meaning of the INA. <u>Id</u>. at 4; <u>accord</u> <u>Diaz</u> v. <u>Holder</u>, 459 Fed. App'x 4, 6 (1st Cir. 2012).

Escobar argues that his "particular social group" of <u>repatriated</u> Guatemalans is different from the group rejected in <u>Sicaju-Diaz</u> because wealth is not an immutable characteristic whereas Guatemalan nationals who have lived in the United States and are thus perceived as wealthy "cannot change the fact that they . . . lived in the United States." But being a target for thieves on account of perceived wealth, whether the perception is temporary or permanent, is merely a condition of living where crime is rampant and poorly controlled. The poor, because of their vulnerability, are also potential targets. Thus, Escobar's gloss would make most inhabitants of crime-ridden countries members of a social group thus defined. <u>Sicaju-Diaz</u>, 663 F.3d at 4.

Statutory withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), requires an even greater likelihood of persecution than asylum, <u>Lobo</u>, 684 F.3d at 19-20, so Escobar's request for statutory withholding necessarily fails. Nor is he eligible for relief under the Convention Against Torture, as Escobar has not established that there is any prospect that he will be "tortured" if returned to Guatemala. 8 C.F.R. § 208.16(c)(2). There may be "credible reports of torture, abuse, and other mistreatment" by members of Guatemala's national civilian police,[1] but this is a far cry from showing that the individual seeking asylum is a likely target.

The petition for review is <u>denied</u>.

---

[1]U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, <u>2010 Human Rights Reports: Guatemala</u> 6 (Apr. 8, 2011). The State Department country report for the following year makes no mention at all of government-sanctioned torture in Guatemala. <u>See</u> U.S. Dep't of State, Bureau of Democracy, Human Rights, and Labor, <u>2011 Human Rights Reports: Guatemala</u> (May 24, 2012).