# United States Court of Appeals
## For the First Circuit

No. 12-1709

JORGE AUGUSTO JUTUS,
a/k/a JORGE AUGUSTO SUTUJ, JORGE AUGUSTO SUTUJ-BAJXAC,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Howard, Lipez and Thompson,
<u>Circuit Judges</u>.

<u>Randy Olen</u> on brief for petitioner.
<u>Ada E. Bosque</u>, Senior Litigation Counsel, Office of
Immigration Litigation, Civil Division, Department of Justice,
<u>Stuart F. Delery</u>, Principal Deputy Assistant Attorney General,
Civil Division, and <u>William C. Peachey</u>, Assistant Director, Office
of Immigration Litigation, on brief for respondent.

July 17, 2013

**HOWARD, Circuit Judge.**  The petitioner, Jorge Augusto Sutuj, seeks review of a decision of the Board of Immigration Appeals (BIA) denying his motion to reopen removal proceedings on the grounds of materially changed country conditions.  Sutuj claims that the BIA erred in finding no material change in country conditions and in purportedly requiring affidavits from first-hand sources to support his motion.  Because the BIA did not abuse its discretion in finding that Sutuj established neither material changed conditions nor a prima facie case for substantive relief, we deny the petition for review.

## I.  Facts and Background

Jorge Augusto Sutuj is a native and citizen of Guatemala.  He arrived in the United States nineteen years ago on March 3, 1994, entering without inspection.  In March of 1998, the United States initiated removal proceedings against Sutuj under the Immigration and Nationality Act (the Act) for being present in the country without having been admitted or paroled.  See 8 U.S.C. § 1182(a)(6)(A)(i).  Sutuj applied for relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture (C.A.T.).  Although his application came over a year following his initial entry into the country, the Immigration Judge (IJ) pardoned the delay as due to circumstances outside the applicant's control.

In his application for asylum, Sutuj alleged that he feared torture by guerilla forces in Guatemala due to his father's service in the military and subsequent work in the civil patrol. Sutuj recounted a history of encounters with the guerillas during his childhood. As a young boy, he believed that guerilla forces would kill him if they discovered that his father had been a member of the military. When he was ten years old, a squad of guerillas questioned him about his father. When Sutuj identified his grandfather instead, the guerillas pushed him into a cooking fire and caused him to burn his forearm. During the same period, Sutuj's uncle died after a severe beating, which Sutuj assumed was the work of guerilla forces. Shortly thereafter, Sutuj's father went into hiding and Sutuj and his brother came to be cared for by a neighboring farmer. When Sutuj was eleven years old, he witnessed the farmer shot dead by guerilla forces for identifying himself by a false name. Sutuj's last incident with the guerillas occurred in 1984, although, with the exception of six months spent in Guatemala City, he continued to live in the Peten region of his childhood until his entry into the United States in 1994.

At Sutuj's asylum hearing in 1999, the IJ found that he had been a credible witness, but that he had failed to establish a threshold case for relief. While acknowledging continuing "incidents of violence both retaliatory and politically motivated and also criminally motivated" in Guatemala, the IJ noted that the

government had signed peace accords with the guerillas in 1996, that the country's "human rights situation has continued to improve," and that Sutuj had alleged no threats against or harm to his family since 1984. "Although his family may continue to live in fear," the IJ concluded, "it does not appear that there is any objective reason to think that the fear will be realized in any way." Furthermore, the IJ found that Sutuj had failed to demonstrate that the guerilla violence he experienced as a child amounted to the level of "persecution or was inflicted on account of race, religion, nationality, membership in a particular social group or political opinion," as required by statute. See 8 C.F.R. § 1208.13(b)(2)(i)(A). Finally, the IJ concluded that Sutuj had failed to qualify for C.A.T. protection because he provided no evidence that he would be subject to egregious pain or mental suffering upon his return, much less by or through the acquiescence of government officials. The BIA affirmed the IJ's decision without opinion and granted Sutuj voluntary departure within thirty days.

Sutuj did not depart the country, but nine years later, in November of 2011, he filed a motion to reopen his application for asylum and withholding of removal. Because his motion to reopen came more than 90 days after the final administrative decision in his case, Sutuj was required by statute to establish that country circumstances in Guatemala material to his asylum

claim had changed since his previous hearing. See id. § 1003.2(c)(3)(ii). In support of his motion, Sutuj submitted a personal affidavit alleging that in the years since the BIA's last decision Guatemala "has been taken over by criminal gangs" and drug traffickers whom government forces have failed to control. As a longtime inhabitant of the United States, Sutuj contended that he would become an immediate target for extortion. Sutuj also submitted a working paper by a human rights organization entitled "A criminal bargain: the state and security in Guatemala," which examined the influence of financial elites over government officials and the "encroaching power of clandestine and criminal cartels."

The BIA denied Sutuj's motion to reopen on the grounds that he had failed to demonstrate materially changed country conditions and that he had failed to establish a prima facie case for asylum. First, the BIA found that the "limited country information" submitted by Sutuj in support of his motion did not show a meaningful change in country conditions since 1999. Both Sutuj's motion to reopen and the record of his initial asylum application reported "widespread societal violence and inadequate police and judicial protection" in Guatemala. Furthermore, the BIA found that Sutuj had failed to provide new and material evidence that he faced persecution motivated by one of the five statutory grounds: race, religion, nationality, membership, or political

-5-

affiliation. To the extent that Sutuj feared extortion intended "to force the payment of money," he did not articulate a threat "equivalent to persecution on a ground protected under the Act." The BIA noted that Sutuj failed to identify his putative extortionists and that his assertions "were not supported by affidavits from first-hand sources." Finally, the BIA rejected Sutuj's claim for asylum on the grounds of "other possible harm" in the absence of a well-grounded fear of persecution. The BIA noted that a grant of asylum on this basis required a finding of past persecution, see id. § 1208.13(b)(1)(iii)(B), which was not the case here.

Sutuj filed this timely petition seeking review of the Board's denial of his motion to reopen.

## II. Discussion

The BIA has jurisdiction over motions to reopen removal proceedings under 8 C.F.R. § 1003.2(a). We have jurisdiction over the BIA's decisions under 8 U.S.C. § 1252. Due to the "strong public interest in bringing litigation to a close . . . promptly" in deportation proceedings, motions to reopen are generally disfavored. Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003) (quoting INS v. Abudu, 485 U.S. 94, 107 (1988)). As a consequence, the BIA "enjoys considerable latitude in deciding whether to grant or deny such a motion," Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007), and we review the BIA's denial of a motion to reopen

only for abuse of discretion, Larngar v. Holder, 562 F.3d 71, 74 (1st Cir. 2009). In practice, we must therefore affirm the BIA's decision unless the petitioner shows that the BIA committed an error of law or "exercised its judgment in an arbitrary, capricious, or irrational way." Raza, 484 F.3d at 127; see also Larngar, 562 F.3d at 74.

An applicant who moves to reopen removal proceedings on any ground must surmount several substantive and procedural hurdles. As a substantive matter, the applicant must both introduce new, material evidence that was not available or discoverable at the prior hearing and must also present a prima facie case of eligibility for the relief sought. Fesseha, 333 F.3d at 20 (quoting Abudu, 485 U.S. at 104); see also 8 C.F.R. § 1003.2(c)(1). The BIA is entitled to exercise its discretion to deny a motion to reopen even where both threshold concerns are met. Smith v. Holder, 627 F.3d 427, 433-34 (1st Cir. 2010); see also 8 C.F.R. § 1003.2(a) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.").

As a procedural matter, an applicant is typically limited to one motion to reopen, to be filed within ninety days of a final administrative decision in his or her case. Larngar, 562 F.3d at 74; 8 C.F.R. § 1003.2(c)(2). However, these requirements are relaxed where the petition establishes that "changed circumstances

have arisen in the country of nationality or in the country to which deportation has been ordered." Larngar, 562 F.3d at 74; see also 8 C.F.R. § 1003.2(c)(3) ("The time and numerical limitations . . . shall not apply to a motion to reopen proceedings . . . based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered . . . ."). The petitioner bears the burden of "mak[ing] a convincing demonstration of changed conditions in his homeland." Raza, 484 F.3d at 127; see also Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008). Evidence of changed country circumstances must, first, have been unavailable during the prior proceeding and, second, be material to the underlying substantive claim for relief. Raza, 484 F.3d at 127; see also 8 C.F.R. § 1003.2(c)(3)(ii).

In light of the record in this case, the BIA did not abuse its discretion in finding that petitioner Sutuj has neither established a prima facie case for asylum,[1] nor provided evidence of materially changed conditions in his country of nationality.

---

[1] Although Sutuj's motion to reopen included his initial claims for both asylum and withholding of removal, the BIA's decision addresses only asylum and Sutuj does not challenge the omission on appeal. His brief also seeks reopening his application for protection under C.A.T., an issue not raised in his original motion. This unexhausted claim is forfeit.

## A. Prima Facie Eligibility for Relief

To establish eligibility for asylum, an applicant must demonstrate a "well-founded fear of persecution on one of five protected grounds": race, religion, nationality, membership in a particular social group, or political opinion. Maryam v. Gonzales, 421 F.3d 60, 62 n.3 (1st Cir. 2005); see also 8 C.F.R. § 1208.13(b)(2)(i)(A). An applicant may satisfy this burden through proof of past persecution, which creates a rebuttable presumption of a well-grounded fear of future persecution. Escobar v. Holder, 698 F.3d 36, 38 (1st Cir. 2012). Alternatively, the applicant must show both that he or she "genuinely fears such persecution" and that "an objectively reasonable person in [his or her] circumstances would fear such persecution." Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010).

A prima facie case for asylum requires the applicant to demonstrate only a "reasonable likelihood" of future persecution, defined as "a realistic chance that the petitioner can at a later time establish that asylum should be granted." Smith, 627 F.3d at 437 (quoting Guo v. Ashcroft, 386 F.3d 556, 564 (3d Cir. 2004)). Even a prima facie case, however, requires several threshold showings. First, the applicant must demonstrate a realistic chance of persecution "based on a statutory ground," limited to race, religion, nationality, membership, or political opinion. Id. Second, "a showing of persecution requires 'more than mere

discomfiture, unpleasantness, harassment, or unfair treatment,'" Mendez-Barrera, 602 F.3d at 25 (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)), but rather "must show serious harm," id.  Finally, the alleged persecution must involve "some connection to government action or inaction."  Raza, 484 F.3d at 129 (quoting Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006)) (internal quotation marks omitted).

The BIA did not abuse its discretion in finding that Sutuj's motion to reopen does not make out a prima facie case for persecution on a statutorily protected ground.  In Sutuj's initial removal proceedings, the IJ found and the BIA affirmed that Sutuj's childhood encounters with Guatemalan guerillas before 1984 did not give rise to a continuing well-founded fear of persecution due to political opinion.  Sutuj did not appeal the BIA's decision at the time and does not challenge this finding now.  Rather, his motion to reopen relies on the rise of criminal syndicates in Guatemala to argue that, as an American repatriate, he will be newly subject to criminal extortion upon his return.

Even acknowledging, for purposes of argument, Sutuj's suggestion that Guatemalan criminal gangs might be aided by the government, an assertion for which he presents no substantiating evidence,[2] Sutuj's fear of financial extortion does not qualify as

_____

[2] In his motion to reopen, Sutuj suggests a "conspiracy by the government and narco-trafficking."  The record does not support this statement or connect it to the applicant's personal fears of

-10-

persecution on the basis of a statutorily protected ground. We have consistently rejected the theory that criminal exploitation motivated by greed or wealth, including that based on one's status as a former inhabitant of the United States, triggers statutory protection. E.g., Escobar, 698 F.3d at 39 (rejecting applicant's theory that "Guatemalan gangs will assume that he amassed significant wealth during his two-decade-long stay in the United States" in denying asylum); Ruiz v. Mukasey, 526 F.3d 31, 36-37 (1st Cir. 2008) (finding it "significant" in denying asylum "that the threats about which the witnesses testified were not connected with any statutorily protected ground but, rather, were clearly motivated . . . by greed"); Lopez de Hincapie v. Gonzales, 494 F.3d 213, 220 (1st Cir. 2007) (finding that extortion does not call for statutory protection). As we have remarked, "being a target for thieves on account of perceived wealth, whether the perception is temporary or permanent," does not satisfy the bar for persecution but "is merely a condition of living where crime is rampant and poorly controlled." Escobar, 698 F.3d at 39.

The BIA's decision followed this precise line of reasoning. The BIA specifically noted the requirement that asylum-seekers allege persecution on race, religion, nationality, membership, or political opinion, concluding that "[g]ang action motivated by extortion is not equivalent to persecution on a

---

extortion.

[protected] ground."  The BIA did not abuse its discretion in determinating that Sutuj failed to present a prima facie case for eligibility for asylum.[3]

Alternatively, Sutuj's motion to reopen suggests that, as a victim of past persecution, he is eligible for asylum even absent a well-founded fear of future persecution if he can establish a "reasonable probability" of "other serious harm upon removal." See 8 C.F.R. § 1208.13(b)(1)(iii)(B).  As the BIA properly noted, however, the IJ in Sutuj's initial removal hearings rejected the claim that Sutuj's childhood experiences in Guatemala amounted to

---

[3] Sutuj additionally claims that the BIA abused its discretion in requiring him to submit affidavits from first-hand sources in order to support his prima facie case.  We read the BIA's reference to affidavits somewhat differently: not as requiring affidavits from first-hand sources per se, but rather as listing the lack of personal affidavits as among the evidentiary gaps that make Sutuj's prima facie showing deficient in this case.  We note that, although the petitioner's argument fails because it is not supported by the record, it is not legally unsound.  We have considered -- and in some cases upheld -- numerous asylum applications and motions to reopen that relied exclusively on an applicant's affidavit and documentary evidence.  See, e.g., Escobar, 698 F.3d at 39 (reviewing a motion to reopen supported by "personal knowledge" of violence and reports by the State Department and human rights organizations); Smith, 627 F.3d at 434 (holding that BIA erred in denying a motion to reopen due to changed country circumstances supported by "reports from human rights organizations, the United States government, and the press"); Mendez-Barrera, 602 F.3d at 24 (reviewing an application for asylum based on "generalized accounts of country conditions"); López-Castro v. Holder, 577 F.3d 49, 53 (1st Cir. 2009) (reviewing an application for asylum supported by Amnesty International and State Department reports); Raza, 484 F.3d at 129 (reviewing a motion to reopen based on "a series of internet articles" describing contemporaneous country conditions); Fesseha, 333 F.3d at 18 (reviewing a motion to reopen supported by reports from the U.S. government and human rights organizations).

persecution motivated by political opinion. Following the BIA's adoption of the IJ's decision, Sutuj did not seek further review of appeal. Accordingly, in considering Sutuj's motion to reopen, the BIA did not abuse its discretion in deferring to this earlier finding and in denying Sutuj's eligibility for relief under 8 C.F.R. § 1208.13(b)(1)(iii)(B).

### B. Changed Country Conditions

Similarly, the BIA correctly found that Sutuj failed to make a convincing demonstration of materially changed conditions in his country of nationality. Before us, Sutuj emphasizes that the IJ's initial denial of asylum relied substantially on evidence of recent peace accords and "improv[ing]" human rights conditions in Guatemala in 1999, while his submitted evidence suggests spiking social disorder and crime. Comparing the original record against Sutuj's evidence in support of his motion to reopen, the BIA concluded that both records "reported widespread societal violence and inadequate police and judicial protection" and consequently suggested no meaningful change in country conditions in the interim. Considering the evidence of national discord at Sutuj's initial hearing and the IJ's own acknowledgment of continuing "instances of violence" on both political and criminal grounds, the BIA's conclusion cannot be considered arbitrary, capricious, or irrational.

In any case, the petitioner's argument neglects the requirement that any changes in country conditions must not simply be newly available, but also "material to the underlying substantive relief" sought. Raza, 484 F.3d at 127; see also 8 C.F.R. § 1003.2(c)(3)(ii). Even assuming that the present-day levels of gang activity in Guatemala mark a qualitative change from the social turmoil in the country ten years ago, rising rates of general criminal activity are not material to Sutuj's claims for asylum or withholding of removal on an enumerated statutory basis. "Evidence of 'widespread violence . . . affecting all citizens' is not enough to establish persecution on a protected ground." Escobar, 698 F.3d at 38 (quoting Maryam, 421 F.3d at 63); see also López-Castro, 577 F.3d at 54 ("A country-wide risk of victimization through economic terrorism is not the functional equivalent of a statutorily protected ground . . . ."). Sutuj thus fails to show changed country circumstances for the same reason he fails to make a prima facie case for relief: because the alleged changes in country conditions have no nexus to Sutuj's fear of persecution due to race, religion, nationality, membership, or political opinion. The BIA noted as much when it observed that Sutuj's reports of growing crime rates in Guatemala provided "no new and material evidence that the respondent will face persecution on account of [a protected ground]." The BIA properly concluded that Sutuj failed

-14-

to establish a material change in country conditions necessary to reopen removal proceedings.

The petition for review is denied.