# United States Court of Appeals
## For the First Circuit

No. 13-1275

PRITPAL SINGH,

Petitioner,

v.

ERIC H. HOLDER, JR., United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Selya and Lipez,
Circuit Judges.

Susan E. Zak on brief for petitioner.
Stuart Delery, Acting Assistant Attorney General, Ernesto H. Molina, Jr., Assistant Director, and Anthony P. Nicastro, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

April 30, 2014

**HOWARD, Circuit Judge**.  Petitioner Pritpal Singh is an Indian national who entered the United States unlawfully in 2003. He challenges the Board of Immigration Appeals' (BIA) affirmance of an Immigration Judge's (IJ) denial of his application for asylum and withholding of removal.[1]  We deny the petition.

## I.

Singh filed his application in April 2003, roughly three months after his entry into the United States.  The United States Citizenship and Immigration Services Asylum Office interviewed Singh twice and denied his application in April 2005.  In May 2005, Singh was issued a Notice to Appear, charging him with removability as an alien present in the United States without being admitted or paroled.  Singh conceded removability but sought relief as described above.  An IJ conducted a merits hearing in June 2011. The following recitation of background facts is taken from Singh's testimony at that hearing.

Singh was a farmer living in the Punjab region of India. Although he considers himself a member of the Sikh religion, he has never been strictly religious.  In 1998, police arrested his cousin because he (the cousin) was a member of the All India Sikh Student Federation, an organization which advocated for a separate state

---

[1] Singh does not contest the rejection of his claim for protection from removal under the Convention Against Torture (CAT). That claim is therefore waived. Usman v. Holder, 566 F.3d 262, 268 (1st Cir. 2009).

-2-

for Sikhs in India, which authorities viewed as a terrorist organization. After being detained for two or three months -- during which time he was beaten -- Singh's cousin moved to Holland in November 1998 and has not returned to India.

Singh was arrested on February 11, 1999, due to his association with his cousin. He was held in custody for three days. Singh was beaten with sticks on his feet and backside for ten to fifteen minutes on the first and second days he was in custody. Singh was released during the third day after his father paid a bribe. He testified that the beating left him "blue" on his back and necessitated a massage from a doctor.

Singh was arrested a second time on April 14, 1999, for ferrying roughly 300 people from his village to a celebration, marking 300 of years of Sikhdom, that resulted in rioting. He was held for five days, a period during which he was beaten for ten to twenty minutes on each of the first three days. The beatings were conducted by several police officers, who kicked Singh in his ribs and legs. During these incidents, Singh testified, the officers asked him about Sikh separatism, while seemingly blaming his cousin for holding such views and asking Singh to reveal his cousin's whereabouts. He was again released after his parents paid money to the police.

A few days after his release, Singh traveled by bus to a cousin's house in Delhi, approximately a six-hour trip. He

-3-

remained there, without incident, for five months, before securing a seaman's visa and going to Russia.  He testified that during his stay in Delhi, his father informed him by phone that police were looking for him and that he should not return home.  Singh first arrived in the United States aboard a ship he was working on that had traveled from Russia.  He left the ship in Florida in April 2000, stayed in the United States for a few months, and then went to Canada to live with a cousin.  He left Canada for the United States in January 2003, and applied for asylum on April 23, 2003.

## II.

The IJ set forth several related bases for denying Singh's petition.  First, the judge concluded that Singh did not testify credibly about his treatment at the hands of his captors in India.  Specifically, the IJ noted a discrepancy between Singh's testimony -- in which he referenced beatings after both of his arrests -- and his written asylum application, which reflects beatings only after the second arrest.  Then the IJ concluded that even if he had found Singh credible, his testimony was weakened by a lack of corroboration through country condition reports in India after 2006, any statements from his father that Singh was still the subject of police searches, or statements from his cousin. Finally, credibility aside, the IJ found that Singh failed to establish either past persecution or the threat of future persecution, specifically observing that his mistreatment did not

-4-

rise to a level of sufficient severity and that his travel around and remaining in India after his arrests -- as well as his ability to obtain a passport and visa -- undercut his claimed fear of future persecution.

On review, the BIA found that the IJ did not commit error in the adverse credibility determination or in the alternative findings.[2]  This timely petition followed.

## III.

Where, as here, the BIA issues its own opinion, we review the Board's decision, rather than the IJ's.  Walker v. Holder, 589 F.3d 12, 17 (1st Cir. 2009).  We adhere to the "substantial evidence" standard, pursuant to which we accept the BIA's findings of fact as long as they are "supported by reasonable, substantial and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  We will reverse the BIA's decision only if "the evidence 'points unerringly in the opposite direction,' that is, unless it compels a contrary conclusion."  Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (quoting Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004).

We start our analysis by sidestepping the credibility question.  The briefs and the record suggest a dispute over whether

---

[2] As another alternative, the IJ found that Singh did not timely file his application.  The BIA assumed a timely filing and the Government does not pursue the issue.  Accordingly, we do not address it.

or when Singh attempted to enter a letter into the record that would have addressed mistreatment after his first arrest, thus potentially erasing the discrepancy between his testimony and his application. Rather than trying to peer through a nearly decade-old mist, we will take his mistreatment claims at face value. Regardless, we agree with the BIA that Singh failed to make his case.

An applicant for asylum must demonstrate a "well-founded fear of persecution" on one of five protected grounds if he is returned to his country of origin: race, religion, nationality, membership in a particular social group, or political opinion. Jutus v. Holder, 723 F.3d 105, 110 (1st Cir. 2013) (quoting Maryam v. Gonzales, 421 F.3d 60, 62 n.3 (1st Cir. 2005)). The applicant can meet this burden through proof of past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution. Id. An alien can also demonstrate a well-founded fear of persecution through an offer of specific proof that his fear is both subjectively genuine and objectively reasonable. Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009). However, we regularly have recognized that an asylum application is properly denied if it is shown by a preponderance of the evidence that the applicant "could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do

so."  8 C.F.R. § 1208.13(b)(2)(ii); see also Silva v. Ashcroft, 394 F.3d 1, 7 (1st Cir. 2005) ("[I]f a potentially troublesome state of affairs is sufficiently localized, an alien can avoid persecution by the simple expedient of relocating within his own country instead of fleeing to foreign soil.").  It is this last proviso that dooms Singh's petition.  The BIA explicitly affirmed the IJ's conclusion that Singh lacked a well-founded fear of future persecution, given his ability to move to Delhi and remain in India for several months without further harassment or arrest after his mistreatment at home and to obtain his travel visa without any undue restriction.  Singh does not contest these conclusions, and thus waives any challenge.  Usman v. Holder, 566 F.3d 262, 268 (1st Cir. 2009).

We need go no further, except to note that rejection of Singh's claim for withholding must follow inexorably from the defeat of his asylum claim, as the former imposes a stricter evidentiary standard on the applicant.  Vasili v. Holder, 732 F.3d 83, 92-93 (1st Cir. 2013); see also Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008) (noting that applicant for withholding must show that future persecution is probable); 8 C.F.R. § 1208.16(b)(1)(i)(B) (the possibility of internal relocation negates any presumption of eligibility for withholding based on past persecution). The petition is **denied**.