# United States Court of Appeals
## For the First Circuit

No. 14-1431

MICHAEL MAZARIEGOS,

Petitioner,

v.

LORETTA E. LYNCH, UNITED STATES ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Selya, and Thompson,
Circuit Judges.

William E. Graves on brief for petitioner.
Terri J. Scadron, Assistant Director, Office of Immigration
Litigation, United States Department of Justice, Civil Division,
Joyce R. Branda, Acting Assistant Attorney General, and Anthony W.
Norwood, Senior Litigation Counsel, on brief for respondent.

June 24, 2015

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E.
Lynch has been substituted for former Attorney General Eric H.
Holder, Jr. as the respondent.

**THOMPSON**, **Circuit Judge**.  Placed in removal proceedings after his arrest on state charges, Michael Jonathan Mazariegos sought to forestall his removal based on his marriage to a United States citizen and the hardship his removal would cause his family. He prevailed before an immigration judge (IJ), but lost when the government appealed to the Board of Immigration Appeals (BIA). Mazariegos did not seek review of that decision, but later petitioned the BIA to reopen the proceedings based on new evidence. The BIA denied the motion and Mazariegos petitions this court for review of that decision.  After careful consideration, we deny the petition.

## BACKGROUND

### A. Arrival and Arrest

Mazariegos is a native and citizen of Guatemala who has lived in the United States since he was two years old, when he and his family entered on visitor visas.[1]  In March 2008, at the age of nineteen, Mazariegos married a United States citizen, Lludelina Garcia, becoming a stepfather to her daughter.  In light of the marriage, Mazariegos was approved a few months later for an I-130 immigrant visa petition.  He applied for adjustment of status on the basis of the approved I-130.

---

[1] His parents are now lawful permanent residents, and his brother is a United States citizen.

The Department of Homeland Security ("DHS") denied his application due to a pending criminal case. That case stemmed from an October 2008 arrest that resulted in charges of receiving stolen property and failure to stop for police in violation of Massachusetts law. According to the police report, Mazariegos was driving a Cadillac when a police officer attempted to pull him over. Instead of stopping, Mazariegos accelerated through a red light and continued driving. As the car approached a wooded area, it stopped suddenly, and Mazariegos and his passenger jumped out of the car and began to run. The officer apprehended both, at which time he observed that a window of the car was smashed out and that a car dealership invoice was visible. Mazariegos admitted sufficient facts to support a finding of guilt and the case was continued without a finding to October 2010.

### B. Removal Proceedings

Meanwhile, in July 2009, DHS issued a Notice to Appear and placed Mazariegos in removal proceedings, charging him with removability under 8 U.S.C. § 1227(a)(1)(B) since he had remained in the United States longer than permitted and overstayed his visitor visa. Mazariegos, represented by counsel, appeared before the IJ where he admitted the factual allegations in the notice and conceded removability. Seeking relief from removal, he renewed his application for adjustment of status based on the approved I-130. Because his convictions rendered him inadmissible to the

United States, and therefore ineligible for adjustment of status under 8 U.S.C. § 1255(a), Mazariegos also applied for a waiver under section 212(h) of the Immigration and Nationality Act, id. § 1182(h)(1)(B), claiming hardship to his lawfully admitted parents and citizen wife and step-daughter.

The IJ held a merits hearing.  Mazariegos and his mother both testified, but his wife, who was estranged from Mazariegos at the time, did not.  Mazariegos testified that he lived with his parents, had dropped out of high school at age sixteen and began working at his parents' auto body shop, and he now served as general manager of the shop and handled matters that required fluency in English.  He has no memory of Guatemala and has not returned since his arrival to the United States at age two.

Mazariegos also described his criminal history.  In 2000, when he was eleven, he unknowingly got into a stolen car. He was charged as a juvenile with receiving stolen property and, on his lawyer's advice, admitted responsibility for the offense. In 2004, at age fifteen, he was charged as a juvenile with rape, kidnapping, and indecent assault and battery on a child under fourteen.  The charges were dismissed, and Mazariegos testified that he did not commit the crimes with which he was charged.  In 2006, when he was seventeen, he was charged with driving without a license and without insurance, to which he pleaded guilty. Finally, in October 2008, at the age of nineteen, Mazariegos was

- 4 -

charged with receiving stolen property and failure to stop for police, as noted earlier.

Mazariegos's mother also testified at the hearing. She indicated that she had moved to the United States in 1993, after her father was killed in Guatemala. She explained that Mazariegos's removal would cause hardship to her and her husband because Mazariegos functioned as the car repair shop's general manager and took "care of almost everything," and the removal would be "really difficult" for her personally.

At the end of the hearing, the IJ issued an oral decision, holding that a favorable exercise of discretion was warranted and granting Mazariegos's waiver and adjustment of status applications. The IJ emphasized the extreme hardship Mazariegos's removal would cause his parents[2] and Mazariegos's positive equities: he was a longtime resident, an "intelligent and articulate young man," active in his family business, not a user of drugs and alcohol, and a responsible husband and stepfather. While the IJ did take into account his lengthy criminal history, the judge attributed much of this to "youthful indiscretions and lack of judgment" and found that Mazariegos had learned from his mistakes.

---

[2] The IJ did not consider the impact on Mazariegos's wife as she did not testify.

- 5 -

## C. Appeal to the BIA

Not happy with the decision, DHS appealed to the BIA, arguing that the IJ erred in exercising discretion to grant both the adjustment of status and waiver applications. The BIA agreed. It concluded that though it did not find any of the IJ's factual findings clearly erroneous, Mazariegos was not entitled to a discretionary section 212(h) waiver. Although the BIA thought this was a "close case," it identified Mazariegos's "ongoing pattern of criminal behavior" as the "principal reason" for the denial. Mazariegos did not petition this court for review of the BIA's decision.[3]

## D. Motion to Reopen

A few months later, Mazariegos (with new counsel) filed a motion with the BIA seeking to reopen his removal proceedings in light of two new pieces of evidence.[4]

---

[3] Mazariegos may have fared better had he sought review at this point rather than following a motion to reopen denial, and we are not unsympathetic to the difficult place he finds himself in. In its brief, the government indicates that it is in the process of determining whether this case is affected by any of the President's November 20, 2014 immigration-related executive actions and we would encourage it to expeditiously make that determination, if it has not done so already.

[4] Mazariegos asked the BIA to reopen the matter sua sponte. Typically, we would lack jurisdiction over the BIA's disposition of such a motion. Charuc v. Holder, 737 F.3d 113, 115 (1st Cir. 2013) ("[I]t is settled beyond hope of contradiction that the decision whether to exercise this sua sponte authority [to reopen] is committed to the unbridled discretion of the BIA, and the courts lack jurisdiction to review that judgment." (internal quotation

First, Mazariegos presented an affidavit from his wife, Lludelina Garcia, who had declined to testify during the removal proceedings. In it, Garcia indicated that she and Mazariegos had reconciled, that he provided financial and emotional support for her and her daughter, that she regretted not attending the merits hearing, and that she was now willing to testify in support of his section 212(h) waiver.

Second, Mazariegos included an affidavit from his former attorney. In it, the attorney stated that he failed to advise Mazariegos that withholding of removal was an option and, in retrospect, that was a mistake. Mazariegos then included a Form I-589 application for withholding of removal, asylum, and protection under the Convention Against Torture (CAT), citing as grounds for relief the fact that a group of policemen in Guatemala killed his grandfather and other family members, and threatened his mother, forcing her to flee to the United States. Mazariegos indicated that since the policemen were never caught, he would fear for his life in Guatemala.

---

marks omitted)). However, though Mazariegos asked for sua sponte relief, apparently thinking his motion untimely, the court deemed the motion timely filed because the BIA's mailing address had recently changed and "mail operations were modified to accommodate that change." As a result, the BIA decided the motion as if it were promptly filed, obviating the need for it to exercise sua sponte powers. See 8 C.F.R. § 1003.2(c)(2) (providing that one motion to reopen removal proceedings may be filed no later than ninety days after the final administrative decision).

Based on the above evidence, Mazariegos asked the BIA to reopen proceedings and remand the case to the IJ. DHS opposed the motion.

The BIA sided with the government, issuing a written decision a few months later denying the motion to reopen. While the BIA acknowledged that Mazariegos's wife and stepchild were qualifying relatives for purposes of the section 212(h) waiver application, it was "not persuaded by the evidence before [it] that [Mazariegos] merits the 212(h) waiver as a matter of discretion in light of his criminal history." With respect to the withholding of removal basis for reopening, the BIA held that the "record and motion . . . lack evidence of conditions in Guatemala to support reopening for asylum, withholding of removal, or protection under the Convention Against Torture." And though Mazariegos had submitted an affidavit from his former attorney, the BIA concluded that he had not complied with the procedural requirements for raising an ineffective assistance of counsel claim under the controlling case, Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988), and in any event, did not show prejudice as a result of his attorney's alleged error, since he did not establish a prima facie case for withholding of removal. The BIA concluded by noting that Mazariegos's motion also did not warrant the court sua sponte reopening this matter as he did not

"demonstrate that an exceptional situation is present . . . especially in light of the negative discretionary factors."

Mazariegos petitioned this court for review of the BIA's decision.

## JURISDICTION

We start with a bone of contention. The government claims we lack jurisdiction to review (what it calls) a purely discretionary denial of a motion to reopen. The government misses the mark.

The law it cites indeed provides that courts cannot review the discretionary component of the Attorney General's section 212(h) waiver decision. See 8 U.S.C. § 1182(h) (providing that "[n]o court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection"); id. § 1252(a)(2)(B)(i) (barring review of "any judgment regarding the granting of relief" under section 1182(h), among others). However, we are not being asked to decide the propriety of a decision to grant or deny the waiver. Recall, Mazariegos never sought review of that decision. Rather, we are considering whether the BIA erred in not reopening the proceedings, a determination we do have jurisdiction over. See Mata v. Lynch, ___ S. Ct. ___, 2015 WL 2473335, at *4 (June 15, 2015) ("[C]ircuit courts have jurisdiction when an alien appeals from the Board's denial of a motion to reopen a removal proceeding."); Neves v.

- 9 -

Holder, 613 F.3d 30, 33 (1st Cir. 2010) (per curiam) ("[D]ecisions on motions to reopen proceedings, like other proceedings made discretionary by regulation and not by statute, are generally subject to judicial review." (citing Kucana v. Holder, 558 U.S. 233, 237, 253 (2010))). And that grant of jurisdiction does not change simply because the BIA found that Mazariegos would not be entitled, as a matter of discretion, to the relief he sought. See Mata, ___ S. Ct. ___, 2015 WL 2473335, at *4 ("Under the INA, as under our century-old practice, the reason for the BIA's denial makes no difference to the jurisdictional issue.").

With that resolved, we proceed to the merits.

### DISCUSSION

Because a motion to reopen removal proceedings is a disfavored tool, given the threat it poses to finality, the BIA has a fair amount of latitude to grant or deny the motion and our review is for abuse of discretion only. Perez v. Holder, 740 F.3d 57, 61 (1st Cir. 2014). Essentially, the decision stands unless the petitioner "can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007).

In order to establish eligibility for reopening, the petitioner "must both introduce new, material evidence that was not available or discoverable at the prior hearing and must also present a prima facie case of eligibility for the relief sought."

- 10 -

Jutus v. Holder, 723 F.3d 105, 110 (1st Cir. 2013); see 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1).

Mazariegos claims two new pieces of evidence warranted the BIA reopening his removal proceedings. First, he points us to the affidavit from his wife submitted in support of a section 212(h) waiver and, second, to his application for asylum and withholding of removal, along with the attendant attorney affidavit explaining his failure to seek this relief earlier.[5]

## A. Section 212(h) Waiver

Since a noncitizen seeking adjustment of status must, among other things, be admissible to the United States, Mazariegos has a problem. 8 U.S.C. § 1255(a). His convictions for crimes of moral turpitude render him inadmissible. See id. § 1182(a)(2)(A)(i)(I). Therefore, he must turn to section 212(h), which provides for a discretionary waiver of inadmissibility when a noncitizen can show extreme hardship to a qualifying relative, e.g., a United States citizen or lawfully resident spouse, parent, or child. Id. § 1182(h)(1)(B).

---

[5] Mazariegos does not pursue his ineffective assistance of counsel claim before this court and, so, this is the last time we mention it. One more thing we need not delve into is Mazariegos's quick invocation of the Due Process Clause at the close of his brief. His claim that denial of the motion to reopen violated his right to due process is unaccompanied by any developed argument or legal support. See González-Morales v. Hernández-Arencibia, 221 F.3d 45, 48 n.3 (1st Cir. 2000) (failure to develop an argument waives it).

As we said, Mazariegos sought to secure this waiver by introducing an affidavit from his formerly estranged wife, which set forth the impact his removal would have on her and her daughter. The BIA, for its part, "acknowledge[d] that in addition to his parents, who are lawful permanent residents, the respondent's wife and his step child are qualifying relatives for the purposes of the waiver." Nonetheless, it was "not persuaded by the evidence before us that respondent merits the section 212(h) waiver as a matter of discretion in light of his criminal history." Mazariegos faults this approach. His primary argument to this court is that the BIA gave him short shrift by not delving into the hardship his wife and stepdaughter would face, likening it to an error of law and an abuse of discretion. But the BIA's course is an acceptable one.

The BIA acknowledged both the existence of the affidavit and its relevance to the waiver application but it nevertheless concluded that reopening was not warranted because, in light of Mazariegos's criminal history, the new evidence would not change his entitlement to the relief requested. This is a permissible basis for denial. The BIA may deny a motion to reopen where it determines that "the movant would not be entitled to the discretionary grant of relief which he sought," even assuming he had established a prima facie case for the relief and introduced previously unavailable, material evidence. INS v. Doherty, 502

U.S. 314, 323 (1992); see also Mariko v. Holder, 632 F.3d 1, 7 (1st Cir. 2011) (applying Doherty); 8 C.F.R. § 1003.2(a) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief."). Although the BIA's analysis was brief, all that is required is that it "fairly considers the points raised by the complainant and articulates its decision in terms adequate to allow a reviewing court to conclude that the agency has thought about the evidence and the issues and reached a reasoned conclusion." Raza, 484 F.3d at 128. Its treatment here satisfies this standard.

The remainder of Mazariegos's arguments get him no further. Though he explicitly recognizes that the only decision before this court is the denial of the motion to reopen, Mazariegos devotes a good amount of attention to the BIA's initial adjustment of status and waiver denial. For one, he criticizes the BIA for not addressing whether removal would result in extreme hardship to his parents, since it denied the request in the exercise of discretion. However, that decision is not before us. Mazariegos never petitioned for its review, and arguing that the BIA's initial treatment of hardship laid a "faulty foundation" for its later denial of his motion to reopen is not enough to bring the initial decision within our purview.

Similarly misguided is his theory that the BIA impermissibly treated him more harshly than a waiver applicant

convicted of a violent or dangerous crime because he was "pretermitted by the Board from showing any hardship at all," whereas applicants convicted of violent or dangerous crimes can prevail in their waiver applications so long as they make a heightened showing of hardship. See 8 C.F.R. §§ 212.7(d); 1212.7(d). Again, Mazariegos's focus is off, to say nothing of the merits of the position. The regulations cited by Mazariegos pertain to the Attorney General's decision to grant a 212(h) waiver, in other words, not the target of this petition for review of the denial of the motion to reopen.

The same goes for Mazariegos's argument that the BIA misinterpreted his criminal history by failing to conduct an analysis of whether his juvenile offenses constituted crimes. It goes beyond the scope of this petition. The BIA's delineation of Mazariegos's criminal history was made in the initial adjustment of status and waiver denial, not in denying the motion to reopen.

There is no need to go further. That ends this aspect of the case.

### B. Asylum and Withholding of Removal

Mazariegos's other claimed basis for reopening was his newly submitted I-589 Application for Asylum and Withholding of Removal, a form of recourse he claims bad lawyering precluded him from seeking earlier. In it, he sought asylum and/or withholding

- 14 -

of removal based on the CAT.[6]  As grounds for relief, he indicated that police officers in Guatemala had killed his grandfather, his grandfather's sister, and his grandfather's nephew, the latter two "because they were family members" of his grandfather.  He also stated that his mother started getting threatening phone calls around this time, which prompted her to emigrate to the United States.  Mazariegos stated: "These police men were never captured.  Since I am a family member too, I fear they would threat [sic] me or use me as a way to threaten my family.  I would fear for my life if I ever return to my home country."

By his own admission, Mazariegos's application was "skeletal," nonetheless he claims that when one considers the totality of the evidence, including the conditions in Guatemala, he established a prima facie case for removal.  To be clear, Mazariegos provided no evidence of the current conditions in Guatemala, which is why the BIA denied the motion to reopen.  But Mazariegos calls this error, contending the BIA should have taken administrative notice of the country conditions.[7]  We disagree on all counts.

---

[6] The form also included options for asylum or withholding of removal on the basis of race, religion, nationality, political opinion, or membership in a particular social group, but Mazariegos did not select any of these.
[7] Specifically, Mazariegos cites the State Department's 2013 Country Conditions Report on Guatemala, which, among other things, references police corruption and police involvement in crimes.

CAT relief requires the applicant to prove that it is more likely than not that he will be tortured if returned to his home country. Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004); 8 C.F.R. § 208.16(c)(2). To establish a prima facie claim, "an applicant must offer specific objective evidence showing that he will be subject to: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Romilus, 385 F.3d at 8 (internal quotation marks omitted).

Aside from the statements in his I-589, Mazariegos did not -- despite the form's instructions to do so -- provide any specific facts to support his claim (e.g., where and when his grandfather was killed), attach any documentary evidence to bolster his contentions (e.g., affidavits from family members), or include any evidence of the conditions in Guatemala (e.g., a country conditions report).[8] Nor did he attempt to explain the

_____

[8] The instructions provide: "To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You must attach documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, explain why in your responses to the following question."

absence of the required documents, again in violation of the form's dictate.

Furthermore, while the BIA could have taken administrative notice of the conditions in Guatemala, it was not required to do so. See Yang Zhao-Cheng v. Holder, 721 F.3d 25, 28 (1st Cir. 2013) ("[A]lthough the BIA is empowered to take administrative notice of commonly known facts such as current events or the contents of official documents, it is not compelled to do so.") (internal quotation marks omitted). On the contrary, the burden of providing evidence to support both a motion to reopen and a CAT claim lies squarely on the applicant. See 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings . . . shall be supported by affidavits or other evidentiary material."); id. § 1208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under this paragraph to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.").

Mazariegos did previously submit to the IJ copies of his grandfather's death certificate and a newspaper article about his grandfather's death, which he draws our attention to now. But Mazariegos does not explain how these documents, relating to a now twenty-five year old murder, prove that it is "more likely than not" that he would be tortured upon return to Guatemala. Romilus, 385 F.3d at 8. In fact, it is unclear whether the documents

- 17 -

Mazariegos touts even support his contention that his grandfather died at the hands of corrupt police. In the article, Mazariegos's grandmother reported that her husband had been killed by "phantom assassins" that had been terrorizing the area. And the testimony of his mother before the IJ, which Mazariegos also points us to, indicates that "some men" killed her father and that she left Guatemala, not because of threatening phone calls, but because she was understandably depressed after her father's death and wanted to start fresh.

To sum things up: Mazariegos failed to offer any documentary evidence in support of his application for CAT relief, including any evidence of the conditions in Guatemala, and the probative value of the modest amount of evidence submitted to the IJ is questionable. We do not think the BIA abused its discretion in deciding that this barebones showing was not enough to establish a prima facie case of entitlement to relief. Left without that crucial prima facie case, the BIA correctly concluded that reopening was not warranted. See Jutus, 723 F.3d at 110 (providing that, to justify reopening, the petitioner "must both introduce new, material evidence that was not available or discoverable at the prior hearing and must also present a prima facie case of eligibility for the relief sought").

## CONCLUSION

For the reasons laid out above, the BIA's denial of the motion to reopen was not an abuse of discretion.  We deny the petition for review.