# United States Court of Appeals
## For the First Circuit

No. 17-1201

ROSA MARIA VILLALTA-MARTINEZ,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Stahl, and Barron
<u>Circuit Judges</u>.

Kevin MacMurray and MacMurray & Associates, on brief for petitioner.

Jeffrey R. Meyer, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Chad A. Readler, Acting Assistant Attorney General, Stephen J. Flynn, Assistant Director, on brief for respondent.

February 7, 2018

**STAHL**, <u>**Circuit Judge**</u>.  Petitioner Rosa Maria Villalta-Martinez ("Villalta-Martinez") seeks our review of an order of the Board of Immigration Appeals ("BIA") denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture Act ("CAT").  After careful consideration, we deny the petition for review.

### I. Facts & Prior Proceedings

We recite here the relevant factual background.  On May 8, 2015, Villalta-Martinez, a citizen of El Salvador, illegally entered the United States.  On May 9, 2015, she was apprehended by Border Patrol Agents, charged under 8 U.S.C. § 1182(a)(6)(A)(i), and released on her own recognizance.  Villalta-Martinez admitted to her removability, and thereafter, filed applications for asylum, withholding of removal, and protection under the CAT, claiming she was persecuted, and faced future persecution, at the hands of Salvadorian gang members, on account of her family membership.[1]

---

[1] Villalta-Martinez originally argued that she was persecuted on account of two statutorily protected grounds, (1) her immediate family membership and (2) people born into lower classes in El Salvador who are able to attain a professional education.  Both grounds were rejected by the BIA.  In her petition for review, Villalta-Martinez's only challenge is to the BIA's decision with respect to her claimed family membership; therefore, we need not address the merits of Villalta-Martinez's alternative ground for protection.

Villalta-Martinez was the only witness to testify in support of her applications before the Immigration Judge ("IJ"). She provided the following information: From 2012-2015, while in El Salvador, she was in a relationship with Ever Eliseo Garcia-Linares ("Garcia"). She became pregnant with Garcia's child and, although she moved into an apartment with Garcia, the couple never married.

Garcia owned a chain of stores in El Salvador. The Marasalvatrucha gang demanded money from Garcia on a weekly basis. Due to these extortion demands, Garcia left El Salvador with the intent to move to Canada; however, he was apprehended in the United States for illegal reentry, having previously been deported.[2]

During her relationship with Garcia, Villalta-Martinez worked in one of his stores. She testified that after Garcia left El Salvador, on at least five separate occasions, gang members came to the store that she worked at, put a gun to her head, and demanded money. As a result, Villalta-Martinez moved to another store to work,[3] in hopes of avoiding trouble with the gang, but the same thing happened. She testified that the gang members came to that store and demanded $2,000. A gang member told her that if

---

[2] Since his illegal reentry into the United States, Garcia has been in federal custody.

[3] Although the testimony is not entirely clear, it appears that Villalta-Martinez transferred to another store that was also associated with Garcia.

she did not pay, he would pull the unborn child from her womb, cut her, and rape her.

After receiving this threat, Villalta-Martinez obtained $3,000 from an aunt, who also resided in El Salvador, in order to travel to the United States. Villalta-Martinez testified that "she was afraid to return to El Salvador because gang members would take reprisals because she did not comply with their demands for money."

The IJ credited Villalta-Martinez's testimony as true. Nonetheless, the IJ found that Villalta-Martinez: (1) failed to establish that she suffered persecution in El Salvador; and (2) failed to establish that she was persecuted on account of her family membership with Garcia. The IJ explained that "the evidence was not that [Villalta-Martinez] was targeted because of Mr. Garcia, but that she was targeted by gangs and each and every time because they wanted money. The respondent has not established that one of the reasons she was targeted was because of her relationship with Mr. Garcia."

The BIA affirmed the IJ's denial and reasoning. The BIA explained:

> [E]ven if [Villalta-Martinez] is considered to be in a familial relationship with a man with whom she was in a romantic relationship and with whom she had a child, the respondent has not established a nexus between her past and future fear of harm by gang members and her familial relationship to the man. The record reflects that the

- 4 -

respondent was the victim of extortion and that she continues to fear future criminal activity.

Because Villalta-Martinez could not meet her burden for asylum, the BIA determined that "she has also not satisfied the higher standard of a clear probability of persecution" as required for the withholding of removal.

## II. Discussion

In order to qualify for asylum, an applicant must demonstrate that she has experienced past persecution or has a well-founded fear of future persecution on account of her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The standard for withholding of removal is even higher; the applicant must show that it is more likely than not that she would be subject to persecution on account of an enumerated ground if she were repatriated. See id. § 1231(b)(3); Mayorga-Vidal v. Holder, 675 F.3d 9, 13 (1st Cir. 2012).

We first consider whether Villalta-Martinez has established a well-founded fear of persecution based on one of the five statutorily recognized categories. 8 U.S.C. § 1101(a)(42)(A). In her petition for review, Villalta-Martinez's argues that the BIA erred in concluding that there was no evidence establishing a nexus between her past persecution and her proposed social group, her family membership. Villalta-Martinez explains

- 5 -

that "[a]lthough money was part of the reasons why gangs targeted her, the main reason was her familial relationship."

Whether an applicant has met his or her burden for proving eligibility is a question of fact, reviewed under the substantial evidence standard. See Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007) ("[W]hether persecution is on account of one of the five statutorily protected grounds is fact-specific"; therefore, "we review the BIA's answer to that question through the prism of the substantial evidence rule."). "We uphold the BIA's findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole, and will reverse only if any reasonable adjudicator would be compelled to conclude to the contrary." Ratnasingam v. Holder, 556 F.3d 10, 13 (1st Cir. 2009) (internal quotations and citations omitted). "When the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, this Court reviews both the BIA's and IJ's opinions." Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012).

"[S]howing a linkage to one of the five statutorily protected grounds is 'critical' to a successful asylum claim." Hincapie, 494 F.3d at 218 (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483 (1992)). In order to sufficiently demonstrate persecution on account of a protected ground, the petitioner "must provide sufficient evidence to forge an actual connection between

the harm [suffered] and some statutorily protected ground," beyond a "reasonable possibility of a nexus." Id.

In describing the gang's extortion tactics before the IJ, Villalta-Martinez testified that "[t]here were times that we were able to close the doors on time, but at the end they would be outside waiting for us and they would take us, take all our belongings." On cross-examination, she explained that the gang members would follow her and "the rest of the employee[s]." "They were demanding money from the store and then they demanded directly money from me." When asked if she was targeted for working at the store, she responded "[f]or that reason, and also because I was the partner of the owner of the store."

We agree with the finding of the BIA that there is "insufficient evidence in the record to demonstrate that the gang members were or would be motivated to harm [Villalta-Martinez] for any other reason than to extort money from her," and we cannot find, viewing the record as a whole, that a reasonable adjudicator would be compelled to conclude to the contrary. Villalta-Martinez consistently testified in the plural, explaining that both she and her fellow employees were targeted by gang members. Such testimony likely indicates that gang members were targeting all the employees in the store in order to extort money. The threats, albeit terrifying, do not satisfy the statutory requirements for asylum. See Escobar v. Holder, 698 F.3d 36, 38 (1st Cir. 2012) (internal

citations omitted) ("Evidence of widespread violence . . . affecting all citizens is not enough to establish persecution on a protected ground."). Further, Villalta-Martinez failed to demonstrate whether any of the gang members who threatened her had any knowledge of her relationship with Garcia. See id. at 38 (finding that petitioner failed to provide a connection between family and protected classification where "nothing indicate[d] that the guerrillas specifically targeted [petitioner's] father").

The dissent suggests that remand is appropriate because "neither the BIA nor the IJ . . . addressed (or even mentioned) the significant countervailing evidence in the record that suggests that Villalta-Martinez was targeted -- at least in part -- due to her familial ties to the father of her child." The dissent argues that the IJ and the BIA failed to consider Villalta-Martinez's testimony that the gangs targeted her "because she was the partner of the owner of the store[.]". Relying on Aldana-Ramos v. Holder, 757 F.3d 9, 18 (1st Cir. 2014), the dissent explains that asylum is proper in mixed-motive cases, "so long as one of the statutorily protected grounds is 'at least one central reason' for persecution."

In Aldana-Ramos, the IJ and the BIA erred by stating that the persecution at issue was due to wealth, and therefore could not be attributed to familial relation. Id. The BIA thus failed to consider the possibility of a mixed-motive case. No

- 8 -

such error occurred here.  The IJ explained that Villalta-Martinez "has not established that <u>one</u> of the reasons she was targeted was because of her relationship with Mr. Garcia."  (emphasis added). The IJ and thus the BIA explicitly acknowledged the possibility of a mixed-motive case, but, based on the evidence presented, made a fact-specific determination that Villalta-Martinez had not shown that the persecution was motivated by a family relationship.

The dissent also ascertains that, in light of the "countervailing evidence" as to the nexus requirement, remand is necessary so that the BIA can make additional factual findings. Relying on <u>Aldana-Ramos</u>, the dissent explains that petitioner "put forth credible testimony that creates at least an inference of a 'nexus' between the harm that she suffered and her ties to a person whom she claims is a family member."  In <u>Aldana-Ramos</u>, a wealthy family was continually singled out and "followed by members of [the persecuting] gang in unmarked cars" even after they had exhausted their financial resources.  <u>Id.</u>  As such, the finding that they were targeted because of their wealth, as opposed to their family membership was problematic being that "[n]either the BIA nor the IJ ever addressed this argument."  <u>Id.</u>  The dissent believes that because Villalta-Martinez presented evidence that she did not have any money when she was persecuted; her lack of money allows an inference that she was persecuted on account of her family relationship; and the IJ and the BIA failed to address

- 9 -

that argument.  However, Villalta-Martinez did not testify that her coworkers, from whom money was also sought, had money or were wealthy.  Furthermore, in Aldana-Ramos, the petitioners testified as to why wealth was not a factor that led to their persecution, which created a basis by which to infer that family membership was at least one of the contributing factors for persecution.  Here, however, petitioner's testimony did not create the same dichotomy provided by the petitioners in Aldana-Ramos.  Villalta-Martinez testified that in addition to targeting her, the gang members were indiscriminately following and threatening all store employees, supporting the BIA's conclusion that the gang members were seeking money without regard for Villalta-Martinez's familial relation. "To reverse the BIA['s] finding we must find that the evidence not only supports [a contrary] conclusion, but compels it."  (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992)(alterations in original)).[4]  We seek to distinguish this case from Aldana-Ramos, not to make our own findings, as the dissent argues, but

---

[4] We acknowledge that the decision by the BIA mistakenly identified Villalta-Martinez as a citizen of Mexico, even though she is from El Salvador.  However, at numerous points in its decision, the BIA correctly identified "[t]he respondent, [as] a native and citizen of El Salvador."  This error does not warrant remand as it does not demonstrate that the decision by the BIA was either arbitrary or capricious.  See Caldero-Guzman v. Holder, 577 F.3d 345, 348 (1st Cir. 2009).

instead to show that under the deferential standard imposed, we see a variety of bases by which to support the BIA and IJ's determinations.

This case is further distinguished from Aldana-Ramos because the evidence in that case was far more compelling than the evidence here. Multiple family members in Aldana-Ramos testified that their family was targeted for persecution even after their financial resources were exhausted. Id. at 18. In contrast, the only evidence that Villalta-Martinez offered to support her position that she was persecuted because of her family relationship is her own speculation. See Giraldo-Pabon v. Lynch, 840 F.3d 21, 25 (1st Cir. 2016) (finding that substantial evidence supported the conclusion that the nexus requirement for asylum was not met where the petitioner "cite[d] little in the way of nexus evidence other than . . . her own belief that another cousin was stabbed because of other family members' involvement in narco-trafficking"); Guerra-Marchorro v. Holder, 760 F.3d 126, 128-29 (1st Cir. 2014) (holding that substantial evidence supported the conclusion that the nexus requirement was not met where the petitioner "presented 'no evidence other than his own speculation' to forge the statutorily required 'link,'" even though the petitioner's testimony had been found credible (quoting Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003))).

Because we find that Villalta-Martinez failed to establish that any harm she suffered was caused by her relationship with Garcia, we need not address whether the BIA erred in determining that the harm she experienced did not rise to the level of persecution. However, one would think that a gang member's specific threat of raping a pregnant women and killing her unborn child if she failed to meet the demands of the gang within 48 hours, after having been threatened at gun point on at least five separate occasions by the same gang, would be the type of harm the Court should consider severe enough to rise to the level of persecution.

The dissent spends much time discussing the issue of whether Villalta-Martinez satisfied her burden of showing that the threats she received from the gang could be attributed to inaction by the government of El Salvador. However, she failed to develop her government inaction argument before this Court beyond a vague reference in her brief, without citation to case law or analysis. See Valdez v. Lynch, 813 F.3d 407, 411 n.1 (holding that an argument is waived where the petitioner "throws in a couple references" to it, but "fails to develop" it). Because government action or inaction is a necessary component of persecution, see Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005), Villalta-Martinez's failure to develop that issue before this Court is, on

- 12 -

its own, sufficient to sustain the BIA and IJ on this point and to deny her petition for review.

Finally, we note that in making its decision, the BIA explained that "*even if the respondent is considered to be in a familial relationship with a man with whom she was in a romantic relationship and with whom she had a child*, the respondent has not established a nexus between her past and future fear of harm by gang members and her familial relationship to the man." (emphasis added). While it is well established that the nuclear family constitutes a recognizable social group, neither the BIA nor the IJ found that the petitioner is in fact part of a nuclear family with Garcia. Gebremichael v. I.N.S., 10 F.3d 28, 36 (1st Cir. 1993). Petitioner testified that she was in a relationship with Garcia from 2012 until 2015 when he left El Salvador. Garcia paid rent for petitioner for a period of time and once petitioner became pregnant, she moved into Garcia's home. However, during the pregnancy, Garcia fled El Salvador and petitioner has neither seen nor spoken with him since and Garcia was not listed on the child's birth certificate as the child's father. While we are not in a position to make a finding on this particular issue, we mention these facts solely to demonstrate some of the various obstacles petitioner would face on the remand the dissent seeks. Petitioner's failure to establish a nexus between her persecution

and her protected class, and her waiver as to government inaction, are the bases by which we deny her petition for review.

Because Villalta-Martinez cannot satisfy her claim for asylum, we also affirm the BIA's decision denying her claim for withholding of removal.  See Escobar, 698 F.3d at 39 ("Statutory withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), requires an even greater likelihood of persecution than asylum.").  Lastly, Villalta-Martinez provides no basis by which the Court should reverse the BIA's decision denying her protection under the CAT, as she failed to argue the point beyond an introductory paragraph in her brief.  See Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008) (finding that petitioner waived her CAT claim appeal when she only referenced the claim in an "introductory assertion").

### III. Conclusion

For these reasons, we deny the petition for review and affirm the decision of the BIA upholding the IJ's denial of Villalta-Martinez's application for asylum, withholding of removal, and protection under the CAT.

**-Concurring and Dissenting Opinion Follows-**

- 14 -

**BARRON**, <u>Circuit Judge</u>, **concurring in part and dissenting in part.** I join the majority in rejecting Rosa Maria Villalta-Martinez's challenge to the denial of her claim under the Convention Against Torture. <u>See</u> 8 C.F.R. § 1208.16. I cannot, however, join the majority's decision to uphold the Board of Immigration Appeals' (BIA) determination that her asylum application must be rejected, too.

The main question on which our review of the BIA's asylum ruling turns is a relatively narrow one. After all, the majority agrees, as do I, that the threats that Villalta-Martinez received from a notorious gang in her home country of El Salvador were serious enough to rise to the level of persecution. Thus, the key point of dispute concerns whether we may sustain the BIA's determination that Villalta-Martinez failed to establish the connection between those threats and her claimed familial ties to the father of her child that she was required to establish in order to satisfy what is known as the "nexus" requirement. <u>See</u> <u>Ivanov</u> v. <u>Holder</u>, 736 F.3d 5, 12 (1st Cir. 2013). For, if the BIA's determination regarding the "nexus" requirement may be sustained, then Villalta-Martinez's petition for review must be denied, even if there is merit to her separate challenge to the determination below that she failed to establish that her home country's government was unwilling or unable to address the threat that the gang posed to her.

- 15 -

We are, of course, obliged to sustain the BIA's ruling on the "nexus" issue if it is supported by "substantial evidence." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). But, we may do so only on the basis of "the record considered as a whole." Id. (internal quotation marks omitted). And here, notwithstanding the majority's contrary conclusion, see Maj. Op. at 7, I do not see how we can.

As I will explain, neither the BIA nor the Immigration Judge (IJ), whose findings the BIA adopted, addressed (or even mentioned) the potentially significant countervailing evidence in the record that suggests that Villalta-Martinez was targeted -- at least in part -- due to her familial ties to the father of her child (a child who was born in the United States and is thus a citizen of this country). Accordingly, consistent with the teaching of Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 197 (1947), and the course that we followed in Aldana-Ramos v. Holder, 757 F.3d 9, 18 (1st Cir. 2014), I would vacate the BIA's ruling as to Villalta-Martinez's asylum claim and remand for further proceedings.[5] And that is because, as I will also

_____

[5] I note that the BIA's decision at a key point states that Villalta-Martinez "has not established past persecution or a well-founded fear of persecution in Mexico on account of an enumerated ground," notwithstanding that she claimed to have suffered persecution only in her home country, El Salvador. This error, to me, does not suggest that it is sensible to make the generous assumption that the BIA must have carefully considered the countervailing evidence of the gang's motivation for the threats,

explain, once the "nexus" ruling is set aside, there is no other ground on which we may uphold the BIA's affirmance of the IJ's ruling denying her asylum petition.[6]

## I.

With respect to the "nexus" issue, I start by reviewing the key evidence that the IJ and the BIA failed to address, which consists of the testimony that Villalta-Martinez gave at her asylum proceeding and which the IJ found to be credible. I then explain why, under our precedent, the IJ's and the BIA's failure to address this evidence precludes us from sustaining the agency's "nexus" ruling.

## A.

Villalta-Martinez explained in her testimony that, while she was living in El Salvador but before she was first threatened by the gang, she worked at a store owned by Ever Eliseo Garcia Linares (Garcia), with whom she lived at the time and who is the father of her child. She further testified that Garcia owned a number of stores in El Salvador and that he was paying protection

---

even though the BIA does not reference that evidence in its decision at all.

[6] Of course, the BIA did not rule that the family that she claims to have established with her boyfriend qualifies as a family for purposes of constituting a protected "social group." Instead, the BIA, like the IJ, simply assumed that she had established such a family with him. I thus do not address that issue, as it is not presented by the petition for review and thus supplies no basis for sustaining the only BIA ruling at issue.

- 17 -

money to a particular gang, the Marasalvatrucha, so that his stores would not be robbed.

Villalta-Martinez explained that, after Garcia fled El Salvador to avoid having to pay off the gang, members of that same gang began to threaten her at the store, even though she had never been personally threatened by members of that gang before. And Villalta-Martinez went on to describe how she eventually moved to a different one of Garcia's stores in order to escape the gang but that the threats from members of that gang did not stop. Rather, she recounted, members of the gang that Garcia had been paying off, and that had threatened her at the first store after he had left the country, simply followed her to that new store and threatened her there.

Villalta-Martinez also testified that each time the gang members came into this second store while she was working there, they "demande[ed] money from the store and then they demanded directly money from me." Villalta-Martinez added that the gang targeted her at that store because she "was the partner of the owner of the store[.]" In fact, she went on to note that she could not have been targeted by the gang members at this store because she had money, as she testified that she had none.

To be sure, Villalta-Martinez did testify that she was not the only store employee whom the gang members threatened. But that acknowledgement hardly suffices to demonstrate that the gang

members did not target her "on account of" her ties to Garcia. Even if the gang members were clearly interested in acquiring money from those they threatened at the stores, we have long recognized that "asylum is still proper in mixed-motive cases even where one motive would not be the basis for asylum, so long as one of the statutorily protected grounds is 'at least one central reason' for the persecution." Aldana-Ramos, 757 F.3d at 18 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)) (emphasis added). Thus, notwithstanding this aspect of Villalta-Martinez's testimony, the gang members may have been partly motivated to target Villalta-Martinez because of her ties to Garcia as his "partner" despite the fact that they also may have wanted money from the store or its employees.

Significantly, the government in cross-examining Villalta-Martinez never challenged her contention that the gang members threatened her, at least in part, because of her relationship with Garcia and not solely in order to obtain money either from her or from the store. That is perhaps because, the record indicates, the government failed to realize that she intended to argue, based on her testimony as to her living arrangement with Garcia and her child with him, that she was part of a family with Garcia for the purposes of establishing her membership in a "social group."

In fact, after Villalta-Martinez completed her testimony, the government initially argued that the IJ should deny

- 19 -

the asylum claim on the ground that "girlfriends of shop owners in El Salvador" did not constitute a cognizable "social group" under the asylum statute, thereby rendering the "nexus" issue beside the point insofar as the government's "social group" argument had merit. The government made no argument at that point in the asylum proceedings that the gang members' threats were not partly motivated by, as Villalta-Martinez had testified, the fact that she was Garcia's "partner."

The government shifted course, however, after Villalta-Martinez's counsel clarified that the petitioner's asserted "social group" was the family that Villalta-Martinez claimed to have established with Garcia. The government at that point argued for the first time that Villalta-Martinez's testimony was insufficient to demonstrate the required "nexus" between the threats that she received and her ties to Garcia.

By then, though, the government had done nothing to undermine the portions of Villalta-Martinez's testimony in which she had asserted, credibly, that the gang had not only threatened her at the first store where she had been working but also had gone on to follow her to the second of Garcia's stores. Nor had the government done anything as of that point to undermine her testimony that the gang members directly targeted her there because she was Garcia's "partner." Nor, finally, had the government done anything by that point to undermine Villalta-Martinez's contention

in her testimony that she had no money of her own at the time that she was so targeted.

Thus, as the case comes to us, the record contains uncontradicted, credible testimony from Villalta-Martinez that would appear to give rise to an inference that the gang's threats were motivated at least to some extent by her claimed familial ties to Garcia. Nevertheless, in finding that Villalta-Martinez had failed to meet her burden to satisfy the "nexus" requirement, neither the IJ nor the BIA discussed (or even referenced) any of the portions of her testimony that I have just described.

The IJ simply concluded summarily and categorically that "the evidence was not that [Villalta-Martinez] was targeted because of Mr. Garcia, but that she was targeted by gangs each and every time because they wanted money." (Emphasis added.) The BIA similarly stated in conclusory and categorical fashion that there "is insufficient evidence in the record to demonstrate that the gang members were or would be motivated to harm the response [sic] for any other reason than to extort money from her." (Emphasis added.) And, in doing so, the BIA claimed to be adopting the opinion (and thus the findings) of the IJ.

**B.**

The key question, then, is whether these rulings on the "nexus" issue may be sustained despite the BIA's and IJ's failure even to mention -- let alone to explain away -- the evidence that

- 21 -

Villalta-Martinez offered that potentially would support her main argument as to why the record showed that there was a "nexus" between the gang members' threats and her membership in a statutorily protected "social group." And the answer to that question, as I will explain, is that, in light of our decision in Aldana-Ramos, these "nexus" rulings may not be sustained.

In Aldana-Ramos, the petitioners premised their asylum claims on the ground that the harm that they had suffered at the hands of a gang in Guatemala was "on account of" of their ties to their father and thus their membership in a protected "social group." Id. at 13-14. They contended that this group was their nuclear family. Id. at 13. The BIA rejected that contention. Id. at 18.

The petitioners contended on appeal in Aldana-Ramos that the BIA erred in two ways in so ruling. The petitioners argued that the BIA had wrongly concluded that, even if they showed that their familial ties to their father were "at least one central reason" why they were targeted by the gang, those ties could not satisfy the "nexus" requirement because the petitioners had not shown that their father had been targeted by the gang based on a statutorily protected ground. See id. at 18. The petitioners also argued that the BIA's ruling that wealth alone explained their targeting by the gang "was unsupported by the record," given that the petitioners had credibly testified that they had "exhausted

all of their own and their family's financial resources in trying to raise the money to ransom their father [from the gang]," but continued to be "followed by [gang] members . . . even after their father's funeral." Id. And, to back up that contention, the petitioners pointed to their testimony that "unmarked cars" followed them after their father's funeral, although we did not say in Aldana-Ramos that the petitioners had claimed in their testimony that the petitioners knew who precisely was in those cars, that the persons in the cars said anything to indicate why they were following the petitioners, or that the persons in the cars knew that the petitioners had exhausted all of their financial resources. Id. at 13.

We then ruled for the petitioners on both of their asserted grounds for overturning the BIA's "nexus" ruling. Id. at 19. We explained that the BIA had erred by failing to consider the possibility that the "nexus" requirement could have been satisfied by a showing that the gang members were partly motivated to target the petitioners due to their familial ties to their father, even if the petitioners' wealth also played a role in their being targeted by the gang and even if their father had not himself been targeted for any reason other than his wealth. Id. We also separately explained that the BIA's "nexus" finding that the petitioners' wealth alone explained the targeting could not be sustained, even under the deferential substantial evidence

- 23 -

standard.  Id.  And we did so because we explained that the BIA had overlooked the critical evidence regarding the unmarked cars and the petitioners' having exhausted their financial resources paying for their father's ransom, given that this evidence sufficed to create an inference of family-based targeting that the BIA was obliged to address.  Id. at 18-19.

In light of Aldana-Ramos's separate substantial evidence holding, I see no justification for reaching a different conclusion with respect to whether substantial evidence supports the BIA's "nexus" ruling in this case.  Here, too, the asylum seeker has put forth credible testimony that creates at least an inference of a "nexus" between the harm that she suffered and her ties to a person whom she claims is a family member.  Here, too, that evidence takes the form of the asylum seeker's credible testimony that she was followed by the gang that menaced her even after she took steps to protect herself from it and that the gang members sought her out in particular because of her ties to the person she claims to be a family member.  Here, too, the asylum seeker contends that these threats were directed at her by the gang even though she had no money to hand over to the gang.  And yet, here, too, the BIA (like the IJ) failed to address or even mention that evidence of family-status-based targeting in concluding that the evidence showed that the asylum seeker had not been harmed "on account of" her familial

- 24 -

ties and that instead she had been targeted solely for financial reasons.

In concluding that, despite the seeming similarities between Aldana-Ramos and this case, Aldana-Ramos is not controlling, the majority offers two grounds for drawing a distinction. But I am not persuaded by either one.

First, the majority rightly points out that in Aldana-Ramos, unlike in this case, the BIA refused to acknowledge the possibility that the "nexus" requirement may be satisfied by showing that the perpetrators of threats had mixed motives, only one of which was to target the asylum-seekers on account of their membership in a statutorily protected group (namely, the nuclear family that they shared with their father). Id. at 18; Maj. Op. 9. But, as noted above, Aldana-Ramos also ruled, wholly apart from that legal error, that the BIA's "nexus" ruling that wealth alone explained the petitioners' targeting could not be sustained because that ruling was not supported by substantial evidence. Id. And Aldana-Ramos came to that separate conclusion about whether substantial evidence supported the "nexus" ruling precisely because the BIA at no point addressed the portions of the petitioners' testimony concerning the men in the unmarked cars and the petitioners' own lack of financial resources that gave rise to an inference that the petitioners were targeted by the gang due to their familial ties to their father. Id. Thus,

<u>Aldana-Ramos</u>'s recognition that the BIA made a legal error concerning whether motives may be mixed does nothing to diminish the relevance to the case before us of <u>Aldana-Ramos</u>'s independent ruling rejecting the BIA's substantial evidence ruling for failing to account for countervailing evidence of family-based targeting.

Second, the majority contends that <u>Aldana-Ramos</u> is distinguishable because the evidence of family-based targeting was much more compelling there than it is here, as Villalta-Martinez's evidence of such targeting in the end amounts to little more than her own speculation about the gang members' motives. Maj. Op. 9. But, even if the evidence of family-based targeting is weaker in this case than it was in <u>Aldana-Ramos</u>, the key point is that the evidence in this case is still strong enough to "create[] an inference" of family-based targeting that the BIA must actually address. 757 F.3d at 18; <u>see also</u> <u>id.</u> at 14 n.2 ("Absent a holding by the [agency] . . . or some explanation rebutting this inference," the agency's conclusion cannot be upheld).

Villalta-Martinez credibly testified that she was singled out by the Marasalvatrucha gang because she was Garcia's partner. She also testified that she knew that Garcia had been subjected to threats by that same gang while she was already working at his store. It thus hardly requires a great inferential leap to conclude from her credible testimony as to these points that she had a more than conjectural basis for believing that the

- 26 -

gang members who she testified targeted her knew of her ties to Garcia when they followed her to a second of Garcia's stores and then directly targeted her there after having targeted other store employees.[7]

Moreover, whether one agrees or not with that assertion, in upholding the BIA's ruling on the ground that Villalta-Martinez's evidence of family-based targeting amounts merely to her own speculation and thus does not suffice to show the required "nexus," the majority is not relying on any finding that the BIA or the IJ, whose findings the BIA purported to adopt, actually made. Neither the BIA nor the IJ even mentioned the evidence of family-based targeting on which Villalta-Martinez primarily relied, let alone explained that such evidence was too speculative.

Nor do the "speculation" cases on which the majority relies, see Maj. Op. 9-10, indicate that we must infer that the BIA and the IJ rejected Villalta-Martinez's testimony that she was

---

[7] Villalta-Martinez did not expressly state that the gang members said anything to indicate that they knew that she was Garcia's partner. But, we did not say in Aldana-Ramos that the petitioners there -- who claimed that the men in the unmarked cars were targeting them because of their relationship with their father -- expressly stated how they knew that the men in those cars were gang members, whether the men in those cars knew that the petitioners were related to their father, or how they knew that the men in those cars were following them because of their ties to their father. See 757 F.3d at 13. Nor, for that matter, did we say that the men in those cars knew that the petitioners had no money to give them. Id. Nonetheless, we concluded that the petitioners' testimony created an inference of family-based targeting that the BIA had to address. Id.

- 27 -

targeted because she was Garcia's partner on the ground that such evidence was too speculative. None of those cases concerned remotely comparable evidence of family-based targeting to that put forward by Villalta-Martinez, and thus it is by no means clear that the BIA or the IJ would have been required to find the evidence too speculative.[8]

---

[8] The three "speculation" cases that the majority relies on are Guerra-Marchorro v. Holder, 760 F.3d 126 (1st Cir. 2014), Giraldo-Pabon v. Lynch, 840 F.3d 21 (1st Cir. 2016), and Khalil v. Ashcroft, 337 F.3d 50 (1st Cir. 2003). In Guerra-Marchorro, however, we explained that the petitioner there did not "either in his brief or in his testimony[] directly state that the gang has targeted him . . . because of his claimed" protected status. 760 F.3d at 129. By contrast, Villalta-Martinez has directly stated precisely that both in her testimony and in her briefing. In Giraldo-Pabon, moreover, the petitioner's only evidence of a "nexus" consisted of her uncle's admonition "'not to go out too often' after a cousin's murder and her own belief that another cousin was stabbed because of other family members' involvement in narco-trafficking." 840 F.3d at 25. Thus, the petitioner there offered no evidence that she had been targeted on the basis of a protected ground (there, familial ties), while Villalta-Martinez has done so through her testimony that indicated she knew gang members were extorting Garcia, that they only confronted her after Garcia fled, that they followed her to the second store and directly approached her there, that she had no money to give them, and that they did so because she was Garcia's partner. And, finally, Khalil held that the BIA supportably concluded that the asylum seeker had failed to demonstrate a "nexus" between his alleged persecution (which took the form of the denial of building permits and civil suits brought against him by his tenants) and his Christian faith because he offered "no evidence other than his own speculation" to link the permit denials to his faith and several of those who sued him were also Christians. 337 F.3d at 55. Thus, that case, too, is not one in which there was comparable evidence of specific targeting of the petitioner, such as Villalta-Martinez has put forward here. In fact, I am aware of no case in which we have sustained a BIA ruling finding no "nexus" in the face of a petitioner's comparable evidence of protected-social-group-based targeting when the BIA has not even mentioned that

- 28 -

Finally, I note that the government, in the part of its brief addressing the "nexus" issue, does not reference any of the "speculation" cases on which the majority relies to sustain the "nexus" rulings.  Nor does the government even argue -- as the majority now posits -- that the reason that Villalta-Martinez's evidence of family-based targeting does not suffice is that it was too speculative to be credited.  Instead, the government, like the IJ and the BIA, simply makes no reference to that evidence at all in arguing that the "nexus" rulings must be sustained.[9]

As a result, it seems to me that the majority is unavoidably upholding the "nexus" rulings on a ground of its own making.  But, that we may not do, as our job is to review the reasoning of the agency, not to supply it.  See Chenery Corp., 332 U.S. at 200.  Thus, per Aldana-Ramos, I would require the BIA to do what it has thus far failed to do -- grapple in a reasoned way with the uncontradicted testimony that Villalta-Martinez credibly offered in order to show that she endured the gang's threats at least in part because she was Garcia's "partner."  See Aldana-

---

evidence.

[9] The government's only argument with respect to "nexus" does not mention Villalta-Martinez's direct testimony that she was followed from store to store and singled out because she was Garcia's partner, and, instead contends conclusorily -- and without citation to any of the "speculation" cases on which the majority relies -- that the gang was "simply motivated by a criminal intent to extort money" from all store employees.

Ramos, 757 F.3d at 18 n.7 ("[T]he government suggests that the BIA could infer that the . . . gang subjectively believed that petitioners still had access to more money.  That approach, not articulated by the BIA, fails because the BIA never actually drew the inference.").

## II.

In consequence of my view of the "nexus" issue, I must now address one last issue that the majority need not reach.  As the government notes, the BIA adopted the IJ's decision, and the IJ ruled not only that Villalta-Martinez lost on the "nexus" issue but also that she had failed to meet her burden of showing that the threats that she received from the gang could be attributed to "action or inaction" by the government of El Salvador.  See Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005); 8 U.S.C. § 1101(a)(42).  Thus, before we may vacate and remand the petition for review, we must address the IJ's ruling on the "action or inaction" issue.

I do not believe, however, that we may uphold the agency's ruling on the basis of the IJ's ruling on the "action or inaction" issue.  And that is so for reasons that are similar to those that lead me to conclude that we may not sustain the agency's "nexus" ruling.

To show the requisite "action or inaction" by the government of El Salvador, Villalta-Martinez put forward the

- 30 -

following evidence: a report by the Organisation for Economic Co-operation and Development (OECD) on issues affecting youth in El Salvador and a Reuters article on the relationship between gang violence and youth migration. This evidence may not be enough, in the face of a contrary agency finding, to "compel" the conclusion that she has shown the required tie between the gang's threats and the government of El Salvador's "action or inaction." Touch v. Holder, 568 F.3d 32, 39 (1st Cir. 2009). The IJ, however, did not address either the report or the article in ruling against Villalta-Martinez on this issue. Instead, the IJ's decision merely notes that Villalta-Martinez failed to report to the authorities in El Salvador the incidents she endured at the hands of the gang that she now contends constituted past persecution.

We have never held, however, that asylum seekers must have sought assistance from authorities in order for them to be able to prove that they have suffered past persecution. To the contrary, we have held that "the failure by a petitioner to make . . . a report is not necessarily fatal to a petitioner's case if the petitioner can demonstrate that reporting private abuse to government authorities would have been futile." Morales-Morales v. Sessions, 857 F.3d 130, 135 (1st Cir. 2017). Thus, the ground the IJ gave for ruling against Villalta-Martinez on this issue cannot suffice.

Moreover, the agency has failed to address (or even mention) the countervailing evidence that casts doubt on the government of El Salvador's ability to control gang activity within its borders -- namely, the OECD report and Reuters article.  And that failure is problematic because, while neither the report nor the article directly addresses the police's ability to prevent gang violence, the OECD report does conclude that government anti-gang initiatives are "ineffective[]," and the Reuters article notes that "[e]ntire neighborhoods in El Salvador are controlled by street gangs."  Cf. Hernandez-Avalos v. Lynch, 784 F.3d 944, 953 (4th Cir. 2015) (holding that government of El Salvador was "unwilling or unable" to control gang violence).  Thus, given that we may not sustain an agency's decision on the basis of reasons other than those that the agency provides, Chenery Corp., 332 U.S. at 196; see Aldana-Ramos, 757 F.3d at 18 n.7,[10] the agency should be required to reconsider this aspect of the asylum ruling, too.

---

[10] The majority asserts that Villalta-Martinez "failed to develop her government inaction argument" on appeal, and thus waives it. Maj. Op. 12.  But, her brief argues that she "presented documentary evidence to support her assertions regarding gang violence and government unresponsiveness" to the IJ and, on the basis of that evidence, her brief contends that the IJ erred in determining she did not "suffer past persecution."  Consistent with my conclusion that Villalta-Martinez did raise the issue in her briefing to us, I note that the government does not contend that Villalta-Martinez waived this issue in her petition for review of the BIA's ruling and instead addresses the merits of the issue by contending that Villalta-Martinez "never offered any evidence to connect the government to any . . . harm."

## III.

For the foregoing reasons, I respectfully dissent as to Villalta-Martinez's asylum claim.